THOMAS P. SMITH, JR.
ACTING REGIONAL DIRECTOR
Sheldon L. Pollock
Gerald A. Gross
Philip A. Fortino
Liora Sukhatme
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
(212) 336-1014 (Fortino)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>             Plaintiff,<br><br>      -against-<br><br>PATIENT ACCESS SOLUTIONS, INC., BRUCE WEITZBERG, and JOSEPH GONZALEZ<br><br>             Defendants. | COMPLAINT<br><br>22 Civ. 4447<br><br>JURY TRIAL DEMANDED |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Patient Access Solutions, Inc. (Ticker: PASO) ("PASO"), Bruce Weitzberg ("Weitzberg"), and Joseph Gonzalez ("Gonzalez") (collectively, "Defendants"), alleges as follows:

## SUMMARY

1. This matter involves a scheme orchestrated by Weitzberg and Gonzalez to artificially inflate the stock price of PASO, a microcap issuer that they controlled. From at least January to April 2020, Weitzberg and Gonzalez issued press releases and tweets falsely claiming that PASO was

actively negotiating a merger and planning to issue dividends. In reality, PASO was not engaged in merger negotiations and had taken no steps to issue a dividend.

2. To support the fictional narrative of an upcoming merger and induce unsuspecting investors to purchase PASO stock, Weitzberg and Gonzalez posted public letters falsely claiming that Gonzalez and a member of PASO's board of advisors ("PASO Advisor") purchased millions of PASO shares on the open market.

3. Gonzalez, using a pseudonym and posing as an unaffiliated investor, also advanced this false campaign by posting false and misleading statements promoting the fictional merger and insider purchases on an Internet chat board.

4. Gonzalez engaged in several other deceptive acts, including lying about his educational background and impersonating a chiropractor to promote PASO on a radio talk show called StockTradersTalk.

## VIOLATIONS

5. By virtue of the foregoing conduct and as alleged further herein, Defendants have violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

6. Unless Defendants are restrained and enjoined, they will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

7. The Commission brings this action pursuant to the authority conferred upon it by Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)] and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)].

8. The Commission seeks a final judgment: (a) permanently enjoining Defendants from violating the federal securities laws and rules this Complaint alleges they have violated; (b) ordering Defendants to disgorge all ill-gotten gains they received as a result of the violations alleged here and to pay prejudgment interest thereon; (c) ordering Defendants to pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; (d) permanently prohibiting Weitzberg and Gonzalez from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; (e) permanently prohibiting Weitzberg and Gonzalez from participating in any offering of a penny stock, pursuant to Securities Act Section 20(g) [15 U.S.C. § 77t(g)] and Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)]; and (f) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa].

10. Defendants, directly and indirectly, have made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

11. Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa].  Defendants may be found in, are inhabitants of, or transact business in the Eastern District of New York, and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District.  For example, at all relevant times, PASO was headquartered in this District, Weitzberg resides in this District, and Gonzalez engaged in financial transactions with banks in this District.

## DEFENDANTS

12.     **PASO**, incorporated in 2006 in Nevada, has its principal place of business in New Hyde Park, New York.  PASO's common stock is quoted on OTC Link, which is operated by OTC Markets Group Inc.

13.     **Weitzberg**, age 63, is a resident of Forest Hills, New York.  Since 2008, Weitzberg served as President, Chief Executive Officer, and Director of PASO.

14.     **Gonzalez**, age 51, is a resident of Charlotte, North Carolina.  Gonzalez was a PASO director from 2007 until he resigned in June 2020.

## FACTS

**I.     Defendants Made False Statements Concerning Merger Discussions and an Upcoming Dividend**

15.     At all relevant times, PASO purported to be a healthcare company, providing administrative and facility services to health care providers in New York.

16.     From January to April 2020, PASO, Weitzberg and Gonzalez issued materially false press releases and tweets in order to create the false impression that PASO was actively negotiating a merger with another entity.

17.     On January 16, 2020, Gonzalez issued the following tweet from PASO's Twitter account, @PAShealth:  "$PASO is exploring a significant merger opportunity and final terms are being negotiated.  Once the terms have been finalized the Company will post the LOI [Letter of Intent] to its disclosure page for shareholders to review with a subsequent 'international' announcement to follow."

18.     On February 13, 2020, PASO issued a press release, which Gonzalez drafted and Weitzberg reviewed, approved and publicly disseminated, "to assure shareholders that the merger negotiations are in a very active state.  The merger candidate partner is represented by a New York, NY based private equity firm with $50 Billion Dollars [sic] under management…Currently, all

4

parties are targeting a close date to take place in Q1 of 2020."

19. On March 20, 2020, Gonzalez posted the following message on the @PAShealth Twitter account: "We continue to work with our PE [private equity] partners on the pending transaction terms. We are also currently coordinating with our financial advisors to deliver a dividend to our shareholders."

20. The January and March tweets and February press release were materially false because, contrary to the claims in those statements, PASO had not engaged in any merger negotiations during the relevant time period. There were no discussions with a merger candidate and no involvement or representation by a private equity firm.

21. On April 17, 2020, PASO issued a press release, authored by Gonzales and reviewed, approved, and disseminated by Weitzberg, stating that the Covid-19 pandemic had paused the "negotiations and pending transaction with the Private Equity represented Merger Candidate." The press release stated that the "process has been restarted with a target date to have a Letter of Intent (LOI) secured on or before May 29th with closing of the transaction before the end of June."

22. The same April 17, 2020 press release also announced that PASO would issue a dividend, with "a formal announcement regarding calculations and shareholder minimums to participate next week." Thereafter, no dividend was formally announced or issued.

23. The April 17, 2020 press release was materially false and misleading because PASO was not engaged in merger negotiations and had made no preparations to issue a dividend.

24. When they made each of the false statements described in paragraphs 15-23, above, Weitzberg and Gonzalez knew or recklessly disregarded that these statements were false and misleading, and their knowledge is imputed to PASO.

25. From January to April 2020, while issuing the false press releases and tweets, PASO sold more than $40,000 of PASO stock to investors.

## II.     Defendants Made False Disclosures Concerning Insider Stock Purchases

26. In February and March 2020, while PASO was issuing false statements concerning the alleged merger negotiations, PASO posted on the OTC Markets website multiple letters representing that Gonzalez and PASO Advisor were actively purchasing large amounts of PASO shares on the open market.

27. PASO posted on the OTC Markets website six letters from Gonzalez notifying the PASO Board of Directors that Gonzalez had purchased PASO shares on the open market ("Gonzalez Letters").

28. The first letter, posted by PASO on February 16, 2020, stated that Gonzalez had "personally acquired approximately 9,000,000 shares of PASO common stock on the open market." Gonzalez's letter also stated that his shares "are being held at a retail brokerage firm," and that the firm's "compliance department has been notified and the holdings are now governed by the rules that apply to insider/affiliate shareholders with all applicable restrictions and limits."

29. PASO posted five subsequent letters on the OTC Markets website, dated February 21st and 26th, March 10th, 13th, and 22nd. In each letter, Gonzalez stated that he had "increased [his] holdings in open market purchases" by an additional 500,000 PASO shares. The final letter included an image that appeared to be a screenshot of Gonzalez's brokerage account, showing 11.5 million shares of PASO.

30. The Gonzalez Letters were materially false and misleading because Gonzalez had not purchased any PASO shares since February 1, 2019, a year before the date of the first letter. In fact, on March 23, 2020, the day after the date of the last letter, Gonzalez started selling his PASO stock.

31. Contrary to the representation in his letter that he had notified his brokerage firm of his affiliation with PASO, Gonzalez told the broker in January 2019 that he had no connection to PASO or to any PASO insiders. Nevertheless, his broker discovered Gonzalez's affiliation with

6

PASO and restricted his account, allowing him to liquidate his shares in limited quantities. From March to August 2020, Gonzalez sold approximately $5,256 worth of PASO stock.

32. The final letter of the Gonzalez Letters, dated March 22, 2020, included an image that appeared to be a screenshot of Gonzalez's brokerage account, showing 11.5 million shares of PASO, but that image was a fabrication. Gonzalez designed the fictitious screenshot image to create the false impression that he had acquired and held PASO shares in his brokerage account.

33. At all relevant times, Gonzalez knew or recklessly disregarded that the Gonzalez Letters and the fictitious screenshot of his holdings were false and misleading, and his knowledge is imputed to PASO.

34. PASO also posted on the OTC Markets website letters purportedly written by PASO Advisor. On February 24, 2020, PASO posted on the OTC website a letter by PASO Advisor, stating that PASO Advisor purchased 600,000 PASO shares on the open market.

35. From February 28, 2020 to March 23, 2020, PASO posted six additional letters, purportedly signed by PASO Advisor, claiming to have purchased additional PASO shares on the open market ("PASO Advisor Letters"). The PASO Advisor Letters were materially false and misleading, as PASO Advisor did not make any additional purchases of PASO shares.

36. Gonzalez wrote and posted the PASO Advisor Letters to create the false impression that PASO Advisor was purchasing PASO shares on the open market. PASO Advisor did not authorize and was not aware of the PASO Advisor Letters.

37. Gonzalez knew or recklessly disregarded that the PASO Advisor Letters were false and misleading, and his knowledge is imputed to PASO.

38. Gonzalez informed Weitzberg that he intended to post the letters in order to show investors that the merger talks were real. Weitzberg took no steps to confirm the accuracy of the letters. Nonetheless, Weitzberg, who controlled the online account used to disseminate the letters,

provided Gonzalez with the access code to post the Gonzalez Letters and the PASO Advisor Letters on the OTC Markets website. Weitzberg knew or was reckless in not knowing that the letters contained materially false information at the time that he authorized Gonzalez to post them.

### III. Gonzalez Touted the False Merger and Insider Purchases

39. To further promote the false merger and insider purchases, Gonzalez regularly posted on an Internet chat board, misleadingly posing as an unaffiliated investor. Using the pseudonym "DamnedYankeeFan," Gonzalez touted the alleged merger and insider purchases.

40. For example, following PASO's January 16, 2020 tweet announcing the "significant merger opportunity," Gonzalez (using the pseudonym "DamnedYankeeFan") posted misleading statements promoting the merger, including:

- January 16, 2020: "Whoa!!!! IMO [in my opinion] I understand now why all the silence. I'm hanging on 'significant' and 'international.'"

- January 19, 2020: "Counting the days until the Company discloses who it's [sic] merger candidate is going to be…IMO it's going to be huge!"

- January 27, 2020: "I'd rather at least have an idea of what's coming and since it happened in a tweet – we can safely assume the market isn't as aware so we would most certainly get a BANG if the merger was a nice sized transaction."

- February 11, 2020: "I contacted the company…I emailed Mr. Gonzalez about the Yield sign and he responded with a call…I was glad that Mr. Gonzalez took the time to return my inquiry with a phone call…I for one appreciate his response and the Company's effort to give transparency during this period."

41. Following the February 13, 2020 press release announcing that "the merger negotiations are in a very active state" and that the merger candidate was "represented by a New York, NY based private equity firm with $50 Billion Dollars [sic] under management," Gonzalez continued to tout the upcoming merger online (using the pseudonym "DamnedYankeeFan").

42. For example, on February 13, 2020, Gonzalez posted, "$50B Private Equity Funds don't play in the shallow end! This deal is legit!"

43. On February 15, 2020, Gonzalez posted, "The Company has finally disclosed the

Easter eggs - $50B Private Equity fund is representing the merger partner. There are no dilutive financial instruments in play. Merger candidate has secured its financing!"

44. Following the March 20, 2020 tweet, Gonzalez continued to tout the "pending" merger online using his DamnedYankeeFan pseudonym.

45. For example, on March 21, 2020, Gonzalez posted that PASO was "merging with another company," and on March 22, 2020, Gonzalez posted that "there is a merger being negotiated. IMO that's what's important here."

46. Gonzalez (again using the pseudonym "DamnedYankeeFan") also touted the fictitious insider purchases. For example, on March 3, 2020, Gonzalez posted, "It's about the deal! That coupled with insiders taking open market positions and filing disclosures is what the market/investors are looking for."

47. On March 31, 2020, Gonzalez posted, "Insider buying is amazing IMO. By my calculation they've spent a combined $250K. It's up to them to deliver and no one makes that kind of bet if they don't plan on delivering. I appreciate the truth and transparency."

48. At all relevant times, and while he posted the statements above, Gonzalez knew or recklessly disregarded that his statements were materially false and misleading because Gonzalez knew or recklessly disregarded that PASO was not negotiating a merger and that Gonzalez and PASO Advisor had not purchased PASO shares on the open market.

### IV.    Gonzalez Lied About his Education and his Identity

49. Gonzalez engaged in several other deceptive acts in 2019 and 2020. First, on January 16, 2019, Gonzalez impersonated a chiropractor located in West Babylon, New York, on a radio talk show named StockTradersTalk. The following day, PASO issued a press release, announcing that the chiropractor, described as PASO's Chief Operating Officer, had been interviewed as a featured guest on StockTradersTalk. The press release included a link to the radio show, where Gonzalez

had impersonated the chiropractor.

50. PASO and Gonzalez did not disclose in the January 17, 2019 press release, or during the radio program, that Gonzalez was impersonating the chiropractor.

51. The chiropractor had never authorized Gonzalez to impersonate him.

52. Gonzalez also falsely represented himself as a graduate of the United States Naval Academy. A PASO press release dated October 31, 2019 stated that Gonzalez "holds a BA in political science from the United States Naval Academy." Gonzalez also included this assertion on his online profile and made similar statements in online posts.

53. Contrary to these assertions, Gonzalez did not graduate from the United States Naval Academy, and he does not have a college degree.

## FIRST CLAIM FOR RELIEF
### Violations of Securities Act Section 17(a)
### (All Defendants)

54. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 53.

55. Defendants, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (1) knowingly or recklessly have employed one or more devices, schemes or artifices to defraud, (2) knowingly, recklessly, or negligently have obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) knowingly, recklessly, or negligently have engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

56. By reason of the foregoing, Defendants, directly or indirectly, singly or in concert,

have violated and, unless enjoined, will again violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder
### (All Defendants)

57. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 53.

58. Defendants, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly have (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

59. By reason of the foregoing, Defendants, directly or indirectly, singly or in concert, have violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently enjoining all Defendants and their agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Securities Act Section 17(a) [15 U.S.C. § 77q(a)], Exchange Act Section 10(b) [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**II.**

Ordering Defendants to disgorge all ill-gotten gains they received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations;

**III.**

Ordering Defendants to pay civil monetary penalties under Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)];

**IV.**

Permanently prohibiting Weitzberg and Gonzalez from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)];

**V.**

Permanently prohibiting Weitzberg and Gonzalez from participating in any offering of a penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, under Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)]; and

**VI.**

Granting any other and further relief this Court may deem just and proper.

Dated: New York, New York
July 28, 2022

    /s/ Thomas P. Smith, Jr.
THOMAS P. SMITH, JR.
ACTING REGIONAL DIRECTOR
Sheldon L. Pollock
Gerald A. Gross
Philip A. Fortino
Liora Sukhatme
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
200 Vesey Street, Suite 400
New York, New York 10004-2616
(212) 336-1014 (Fortino)
FortinoP@sec.gov