UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------X

SECURITIES AND EXCHANGE COMMISSION,

        *Plaintiff*,

  - against -                 **MEMORANDUM & ORDER**

PATIENT ACCESS SOLUTIONS, INC.,      No. 22-cv-4447(KAM)(JAM)

        *Defendant*.

----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

      Plaintiff Securities and Exchange Commission ("SEC")
brought this action against defendant Patient Access Solutions,
Inc. ("PASO") pursuant to its authority under Sections 20(b) and
20(d) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C.
§§ 77t(b) and 77t(d), and Section 21(d) of the Securities Exchange
Act of 1934 ("Exchange Act"), 15. U.S.C. § 78u(d).

      The Court assumes familiarity with the background of
this case. *See SEC v. Patient Access Solutions, Inc.*, No. 22-CV-
4447(KAM)(JAM), 2024 WL 3904795, at *1–3 (E.D.N.Y. Aug. 22, 2024)
(describing the factual and procedural background of the instant
case). As alleged in the Complaint, the SEC's core allegation is
straightforward: Two PASO directors, Bruce Weitzberg (who also
served as President and Chief Executive Officer) and Joseph
Gonzalez, orchestrated a fraudulent scheme to inflate PASO's stock

price through a series of public announcements that PASO was actively negotiating a merger when, in reality, there were no merger discussions at all. (ECF No. 1, Complaint, ¶ 1.) The SEC attributes Weitzberg and Gonzalez's alleged fraud to PASO and alleges violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b); and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.[1] PASO failed to appear or otherwise defend this action.

After its two earlier motions for default judgment were denied without prejudice due to procedural defects, (January 2, 2024 Docket Entry; ECF No. 28.), the SEC filed the instant motion for default judgment, (ECF No. 29.). The SEC's prior motion for default judgment, (ECF No. 28.), was denied due to "insufficient compliance with Local Civil Rule 55.2(c)" – specifically, failure to provide adequate evidence "that the address used for service of the motion for default is the last known business address for the corporate defendant. *SEC v. Patient Access Sols., Inc.*, No. 22-CV-4447(KAM)(JAM), 2024 WL 3904795, at *4 (internal brackets omitted) (citation omitted).[2] The SEC remedied this shortcoming in its instant motion for default judgment.

---

[1] PASO is the only remaining defendant in this case. The SEC voluntarily dismissed its case against Mr. Weitzberg on January 2, 2024 following Mr. Weitzberg's death. (ECF No. 25.) The SEC's case against Mr. Gonzalez was resolved by consent judgment on September 29, 2022. (*See* ECF No. 9.)
[2] The SEC's first motion for default judgment, (ECF No. 17), was also denied without prejudice for noncompliance with Local Civil Rule 55.2. (*See* January 2, 2024 Docket Order.)

For the reasons explained below, the SEC's motion for default judgment is granted as to both of its claims. As to the SEC's requested remedies, the SEC's request for imposition of a $150,000 civil penalty is granted. The SEC's request for a permanent injunction is respectfully denied.

## LEGAL STANDARD

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). "The first step is to obtain an entry of default." *Id.* "When a party against whom affirmative relief is sought has failed to plead or otherwise defend, a plaintiff may bring that fact to the court's attention." *Id.* at 504-05. "In such circumstances Rule 55(a) empowers the clerk of court to enter a default." *Id.* at 505. "The next step requires the plaintiff to seek a judgment by default under Rule 55(b)." *Id.* "Rule 55(b)(1) allows the clerk to enter a default judgment if the plaintiff's claim is for a sum certain and the defendant has failed to appear." *Id.* "In all other cases Rule 55(b)(2) governs." *Id.* "It requires a party seeking a judgment by default to apply to the court for entry of a default judgment." *Id*.

"Before entering a default judgment, the court must ensure that (1) jurisdictional requirements are satisfied, (2) the plaintiff took all required procedural steps in moving for a

default judgment, and (3) the plaintiff's allegations establish the defendant's liability as a matter of law." *Wilmington Sav. Fund Soc'y, FSB as trustee of Aspen Holdings Tr. v. Fernandez*, No. 22-CV-6474 (KAM) (ST), 2024 WL 219092, at *2 (E.D.N.Y. Jan. 22, 2024).

### A.    Jurisdiction & Venue

"[B]efore entering a default judgment, the district court must pursue its independent obligation to inquire into the existence of subject-matter jurisdiction and assure itself that it has personal jurisdiction over the defendant." *Republic of Guatemala v. IC Power Asia Dev. Ltd.*, 619 F. Supp. 3d 421, 428 (S.D.N.Y. 2022) (cleaned up) (internal citations omitted). As to venue, "[a] civil action may be brought in … a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). The Court has previously found subject matter jurisdiction over this case, personal jurisdiction over the defendant, and proper venue in this district. *See SEC v. Patient Access Sols., Inc.*, No. 22-CV-4447(KAM)(JAM), 2024 WL 3904795, at *3-4 (E.D.N.Y. Aug. 22, 2024).

### B.    Required Procedural Steps

"A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules." *Century Sur. Co. v. Atweek, Inc.*, No. 16-CV-335 (ENV) (PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018).

Local Civil Rules 7.1 and 55.2 impose the additional requirements that the plaintiff attach certain materials to the motion for default judgment and file proof that all motion papers were mailed to the defendant.

### C. Liability as a Matter of Law

"[A] default is an admission of all well-pleaded allegations against the defaulting party." *Henry v. Oluwole*, 108 F.4th 45, 55 (2d Cir. 2024). But "a defaulting party does not admit conclusions of law." *Id.* (internal quotations omitted). "In this respect, the standard for whether to award a default judgment resembles that applicable to a motion to dismiss." *Id.* "To enter a default judgment, a district court must determine whether — after taking all well-pleaded allegations as true and making reasonable inferences in the plaintiff's favor — the plaintiff's allegations establish liability as a matter of law." *Id.* (cleaned up). "Only after the district court is convinced that the facts meet the elements of the relevant cause of action — whether those facts are established by well-pleaded allegations or proven by admissible evidence — may the district court enter a default judgment." *Id.*

"Section 10(b) of the Exchange Act and Rule 10b-5, which prohibit fraud in the purchase or sale of a security, are violated if a person has (1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent

5

device; (2) with scienter; (3) in connection with the purchase or sale of securities." *SEC v. Frohling*, 851 F.3d 132, 136 (2d Cir. 2016) (internal quotations omitted). "A false statement was made with the requisite scienter if it was made with the intent to deceive, manipulate, or defraud." *Id.* (internal quotations omitted). "[S]cienter may be established through a showing of reckless disregard for the truth, that is, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care." *Id.*

"The elements of a claim under § 17(a) of the Securities Act, which prohibits fraud in the offer or sale of a security, 15 U.S.C. § 77q(a), are essentially the same as the elements of claims under § 10(b) and Rule 10b-5." *Id.* (cleaned up). In this case, a violation of Exchange Act Section 10(b) and specifically Rule 10b-5 is also a violation of Securities Act Section 17(a).

**D. Permanent Injunction**

"Injunctive relief is expressly authorized by Congress to proscribe future violations of federal securities laws." *SEC v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998). "The SEC must demonstrate that there is a substantial likelihood of future violations of illegal securities conduct." *Id.* The Court looks at the following factors: "[1] the fact that the defendant has been found liable for illegal conduct; [2] the degree of scienter involved; [3] whether the infraction is an isolated occurrence;

[4] whether defendant continues to maintain that his past conduct was blameless; and [5] whether, because of his professional occupation, the defendant might be in a position where future violations could be anticipated." *Id.* (internal quotations omitted).

## DISCUSSION

The Court now turns to the SEC's motion for default judgment as to Claims 1 and 2. The Court first analyzes the SEC's claims and then analyzes the appropriate remedies.

## I. Default Judgment

Before granting a plaintiff's motion for default judgment, the Court must make a series of sequential findings. *First*, the Court must determine whether it has subject matter jurisdiction over the case, whether it has personal jurisdiction over the defendant, and whether venue is proper in this district. *Second*, the Court must determine whether the SEC has complied with the required procedural steps under Federal Rule of Civil Procedure Rule 55 and Local Civil Rules 7.1 and 55.2. *Third*, the Court must determine whether the SEC has adequately alleged its two claims, which is a prerequisite for the Court to grant default judgment as to the claims.

### A. Jurisdiction & Venue

For the reasons explained below, the Court confirms that it has subject matter jurisdiction over the case and personal

jurisdiction over PASO.  The Court also determines venue is proper in the Eastern District of New York.

### 1.    Subject Matter Jurisdiction

This Court has subject matter jurisdiction over the federal securities violations at issue here.  *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 376–77 (2016) ("Section 27 of the Securities Exchange Act of 1934 ... grants federal district courts exclusive jurisdiction 'of all suits in equity and actions at law brought to enforce any liability or duty created by [the Exchange Act] or the rules or regulations thereunder.'") (quoting 15 U.S.C. §78aa(a)).

### 2.    Personal Jurisdiction

This Court has personal jurisdiction over PASO, which, as alleged, "has its principal place of business in New Hyde Park, New York" and within the Eastern District of New York.  (Complaint ¶ 12.) *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) ("[E]xcept in a truly exceptional case, a corporate defendant may be treated as essentially at home only where it is incorporated or maintains its principal place of business.") (internal quotations omitted).

### 3.    Venue

Venue is proper in this district because the alleged transactions giving rise to the SEC's claims occurred within – or are reasonably believed to have occurred within – the Eastern

District of New York.  "PASO was headquartered in this District, Weitzberg resides in this District, and Gonzalez engaged in financial transactions with banks in this District."  (Complaint ¶ 11.)  The Complaint adequately alleges that "a substantial part of the events ... giving rise to the claim occurred" within this district.  28 U.S.C. § 1391(b)(2).

**B.    Required Procedural Steps**

As the Court previously held in this case in *SEC v. Patient Access Solutions, Inc.*, No. 22-CV-4447(KAM)(JAM), 2024 WL 3904795 (E.D.N.Y. Aug. 22, 2024), the SEC complied with Local Civil Rules 7.1 and 55.1, *see id.* at *4, but failed to comply with Local Civil Rule 55.2.[3]

As relevant here, "[u]nder Local Civil Rule 55.2(b), a 'party seeking a judgment by default ... shall append to the application (1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment.'"  *Id.*  (quoting Loc. Civ. R. 55.2(b)).  "The moving party must then mail all papers submitted to the Court pursuant to Local Civil Rule 55.2(b) to the party against whom a

---

[3] Local Rule 55.2 was revised on July 1, 2024. The revision occurred between the filing of the SEC's last motion for default judgment (filed January 3, 2024, ECF No. 26.) and the Court's decision denying the motion without prejudice (decided August 22, 2024, ECF No. 28.).  Because the SEC initiated default judgment proceedings before the effective date of revisions to the Local Rules, the Court will, for the purposes of this renewed motion, apply the version of Local Rule 55.2 in effect prior to the July 1, 2024 revisions.  *See SEC v. Patient Access Solutions, Inc.*, 2024 WL 3904795, at *4 (similarly applying the prior local rules in this case).

default judgment is sought 'at the last known residence of such party (if an individual) or the last known business address of such party (if a person other than an individual)' and file proof of such mailing with the court." *Id.* (quoting Loc. Civ. R. 55.2(c)).

The Court denied without prejudice the SEC's prior motion for default judgment because "failure to comply with Local Rule 55.2(c) warrants denial of the motion." *Id.* at 5. Notwithstanding the SEC's certificate of service, "it [was] still unclear to the Court whether PASO was in fact properly served at its last known business address under Local Civil Rule 55.2(c)" because the SEC "provide[d] no factual support that PASO ever conducted business there." *Id.* (internal quotations omitted).

In its instant motion for default judgment, the SEC has now offered substantial factual support as to PASO's last known address. Through the addition of 11 exhibits, (ECF Nos. 29-7 to 29-17, Exhibits E through O), and a supplemental declaration, (ECF No. 29-2 ¶¶ 22-32), the SEC has now adequately demonstrated that 2001 Marcus Avenue, Suite N 218, New Hyde Park, NY 11042 is PASO's last known business address.

The SEC's supplemental declaration provides facts showing a sufficient nexus between PASO's business activities and PASO's most recent known address. PASO's then-President Bruce Weitzberg "identified PASO's website ... and LinkedIn account,"

(ECF No. 29-7, Exhibit E, at 3.), which in turn, showed the 2001 Marcus Avenue address both as PASO's business address, (ECF No. 29-10, Exhibit H, at 6,8.) and its "Headquarters" (ECF No. 29-11, Exhibit I, at 2.).  This evidence of PASO's business address is further supported by information suggesting PASO used the same address for its various business ventures such as "New Horizons Center & Better Life Clinics," (*see* ECF No. 29-2 ¶ 27.), "MyBoostIV," (*see* ECF No. 29-2 ¶ 28.), and "PASHealth", (*see* ECF No. 29-2 ¶ 29.).  Because the SEC documented that PASO had a sufficient nexus to the 2001 Marcus Avenue address and "is not aware of any address that PASO used subsequent to doing business" there, (*see* ECF No. 29-2 ¶ 31.), the Court finds the 2001 Marcus Avenue address to be the "last known business address" under Local Civil Rule 55.2.  The SEC is therefore now compliant with Local Civil Rule 55.2.[4]

## C.  Liability as a Matter of Law

As the final step before ruling on the SEC's motion for default judgment, the Court considers whether the SEC has adequately alleged PASO's violations as a matter of law.

### 1.  Factual Allegations

"[A] default is an admission of all well-pleaded

---

[4] This conclusion is not affected by the SEC's difficulty in serving PASO, which may no longer be in operation. The SEC's most recent attempt at service at the 2001 Marcus Avenue address in September 2024, (*see* ECF No. 30), was unsuccessful because the unit was vacant with no mail forwarding address on file (*see* ECF No. 31).

allegations against the defaulting party." *Henry v. Oluwole*, 108 F.4th at 55. The SEC alleged "a scheme orchestrated by [PASO's directors] [Bruce] Weitzberg and [Joseph] Gonzalez to artificially inflate the stock price of PASO, a microcap issuer that they controlled." (Complaint ¶ 1.) "From at least January to April 2020, Weitzberg and Gonzalez issued press releases and tweets falsely claiming that PASO was actively negotiating a merger and planning to issue dividends" when "[i]n reality, PASO was not engaged in merger negotiations and had taken no steps to issue a dividend." (*Id.*) For example, "[o]n February 13, 2020, PASO issued a press release, which Gonzalez drafted and Weitzberg reviewed, approved and publicly disseminated, 'to assure shareholders that the merger negotiations are in a very active state'" and that "[t]he merger candidate partner is represented by a New York, NY based private equity firm with $50 Billion Dollars [sic] under management ... Currently, all parties are targeting a close date to take place in Q1 of 2020." (*Id.* ¶ 18.) "To support the fictional narrative of an upcoming merger and induce unsuspecting investors to purchase PASO stock, Weitzberg and Gonzalez posted public letters falsely claiming that Gonzalez and a member of PASO's board of advisors ... purchased millions of PASO shares on the open market." (*Id.* ¶ 2.) "Gonzalez, using a pseudonym and posing as an unaffiliated investor, also advanced this false campaign by posting false and misleading statements

promoting the fictional merger and insider purchases on an Internet chat board." (*Id.* ¶ 3.)

### 2. The SEC's Claims

The Complaint alleges two claims against PASO under Section 10(b) of the Exchange Act and 17(a) of the Securities Act. (Complaint at 10-11.) As explained earlier, "[t]he elements of a claim under § 17(a) of the Securities Act, which prohibits fraud in the offer or sale of a security, 15 U.S.C. § 77q(a), are essentially the same as the elements of claims under § 10(b) and Rule 10b-5." *Frohling*, 851 F.3d at 136. (cleaned up). Therefore the Court can jointly analyze whether the SEC has adequately alleged violations under both sections.

A violation requires the defendant to have: "(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." *Id.* "The SEC bears the burden of proof and must prove every element of its claim[s] by a preponderance of the evidence." *SEC v. Rorech*, 720 F. Supp. 2d 367, 404 (S.D.N.Y. 2010) (citing *Herman & MacLean v. Huddleston,* 459 U.S. 375, 389-91 (1983)).

As a threshold matter, under the principle of *respondeat superior*, PASO is liable for the deceptive business-related conduct of its directors Weitzberg and Gonzalez. *See SEC v.*

13

*Schoengood*, No. 21-CV-979 (ENV) (SIL), 2023 WL 7000984, at *7 (E.D.N.Y. Jan. 9, 2023) ("[L]iability for a scheme to defraud under these [Exchange Act] provisions may attach to a corporate defendant under principles of *respondeat superior*.") (collecting cases). As explained below, the conduct and scienter of Weitzberg and Gonzalez, which are attributable to PASO, satisfy the elements of violations under Sections 10(b) and 17(a).

### a.    Material Misrepresentation

Given that, as alleged, there is no doubt as to PASO's misrepresentation regarding the existence of merger talks, the only point of inquiry is whether that misrepresentation was material.    "Information is material if there is a substantial likelihood that a reasonable investor would consider it important in deciding how to invest." *SEC v. Mayhew*, 121 F.3d 44, 51 (2d Cir. 1997) (cleaned up).    "[B]ecause a merger is one of the most important events that can occur for a small company, information regarding a merger can become material at an earlier stage than would be the case as regards lesser transactions." *Id.* (internal quotations omitted).    "Moreover, where information regarding a merger originates from an insider, the information, even if not detailed, takes on an added charge just because it is inside information." *Id.* (internal quotations omitted).

The Complaint adequately alleges that PASO's misrepresentations about merger talks would be important to a

14

reasonable investor – especially given that the announcement was made through official company channels and with some specifics as to the fictitious merger being negotiated.  PASO used its company Twitter account and company press releases to announce "a significant merger opportunity [where] final terms are being negotiated," (Complaint ¶ 17), with a "merger candidate partner ... represented by a New York, NY based private equity firm with $50 Billion Dollars [sic] under management," (Complaint ¶ 18). Reasonable investors would find representations by a company about ongoing merger negotiations to be important, and PASO's alleged misrepresentation was therefore material.

### b.  Scienter

"Representing information as true while knowing it is not, recklessly misstating information, or asserting an opinion on grounds so flimsy as to belie any genuine belief in its truth, are all circumstances sufficient to support a conclusion of scienter." *Schoengood*, 2023 WL 7000984, at *8.  The misrepresentation at issue here – specifically, a series of public announcements that "merger negotiations are in a very active state," (Complaint ¶ 18), when they never occurred at all – was so brazen that the scienter is clearly established.

### c.  Connection with the Sale of Securities

For violations of Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act, the fraud must be "in

connection with the purchase or sale of securities." *Frohling*, 851 F.3d at 136.  As a threshold matter, PASO's stock qualifies as a "security."  *See, e.g., Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685 (1985) (noting that the definition of "security" – which includes "any interest or instrument commonly known as a 'security'" – "is quite broad").  "PASO's common stock is quoted on OTC Link," (Complaint ¶ 12), which "is registered with the SEC as an 'alternative trading system[,]' not an exchange." *In re iAnthus Cap. Holdings, Inc. Sec. Litig.*, No. 20-CV-3135 (LAK), 2021 WL 3863372, at *3 (S.D.N.Y. Aug. 30, 2021).  Given that the goal of PASO's scheme was to inflate PASO's stock price on OTC Link, the alleged fraud was certainly "in connection with the purchase or sale of securities." *Frohling*, 851 F.3d at 136.[5]

### D.  Summary of Findings

The Court has undertaken analysis of all the steps required for evaluating the SEC's motion for default judgment. After having (i) found proper jurisdiction and venue, (ii) found the SEC compliant with the federal and local rules of civil

---

[5] OTC Link's status as an "alternative trading system" does not affect this conclusion.  Despite their many similarities, the statutes for Section 10(b) and Section 17(a) violations use different terms of art.  Notably, the applicable statute for Section 10(b) violations, 15 U.S.C. § 78j(b), prohibits interstate fraud as to "[1] any security registered on a *national securities exchange* or [2] any security not so registered."  Because OTC Link is not a registered "national securities exchange," PASO's stock on OTC Link is covered instead by the catchall provision of "any security not so registered." *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 130 (2010) (finding that the catchall provision applies only to domestic stock transactions but not otherwise recognizing restrictions on its scope).

procedure, and (iii) found the SEC's claims adequately alleged as a matter of law, the Court grants default judgment as to Claims 1 and 2.

## II.        Remedies

Next, the Court must determine the appropriate remedies – specifically, whether the SEC has met its burden for its requested $150,000 civil penalty and permanent injunction. (ECF No. 29-1, at 23-27). For the reasons stated below, the Court imposes the requested $150,000 civil penalty but declines to issue the requested permanent injunction.

### A.    Civil Monetary Penalty

The Securities Act and Exchange Act "authorize three tiers of monetary penalties for statutory violations." *SEC v. Razmilovic*, 738 F.3d 14, 38 (2d Cir. 2013), *as amended* (Nov. 26, 2013) (citing 15 U.S.C. §§ 77t(d), 78u(d)(3)). As the Second Circuit explains, the statutes provide a three-tiered penalty hierarchy:

> [A] first-tier penalty may be imposed for any violation; a second-tier penalty may be imposed if the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement"; a third-tier penalty may be imposed when, in addition to meeting the requirements of the second tier, the "violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons,"

*Id.* (citing 15 U.S.C. § 77t(d)(2)(A)-(C); 15 U.S.C. § 78u(d)(3)(B)(i)-(iii)).

17

"Beyond setting maximum penalties, the statutes leave the actual amount of the penalty up to the discretion of the district court." *Id.* (cleaned up). "Factors that are relevant to a determination of whether a civil penalty is appropriate, and the amount of the fine, include (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; (5) whether the defendant has admitted wrongdoing; and (6) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *SEC. v. Colonial Inv. Mgmt. LLC*, 659 F. Supp. 2d 467, 503 (S.D.N.Y. 2009), *aff'd,* 381 F. App'x 27 (2d Cir. 2010).

Here, the SEC argues that PASO is eligible for third-tier penalties because "the Complaint's allegations show that PASO knowingly and intentionally engaged in a securities fraud that at least created a significant risk of substantial losses to other persons — those who purchased PASO shares when PASO's numerous false statements had fraudulently inflated its share price." (ECF No. 29-1, at 27.) The Court agrees. PASO's fraud created, at minimum, "a significant risk of substantial losses to other persons" under 15 U.S.C. § 78u(d)(3)(B)(iii)(bb) because investors may well have believed that PASO was in merger talks and adjusted

18

their trading activity accordingly by paying a higher price for PASO's stock.

The SEC's request for a $150,000 civil penalty is reasonable and relatively modest.[6]  As alleged, PASO's scheme was brazen.  PASO's directors Weitzberg and Gonzalez lied about the existence of merger talks and concocted an elaborate monthslong scheme to fraudulently inflate PASO's stock price.  The damage was somewhat limited thanks to Gonzalez's broker who discovered Gonzalez's affiliation with PASO after Gonzalez, a PASO director, previously told the broker that he (Gonzalez) had no connection to the company.  (*See* Complaint ¶ 31.)  The broker then restricted Gonzalez's brokerage account.  (*Id.*)  The magnitude of harm to victims of PASO's fraud was therefore limited not by PASO's lack of ambition but rather by an alert broker.

Although most relevant factors weigh heavily against PASO, its apparent status as a distressed (or perhaps defunct) business weighs somewhat in its favor.  Its vacant headquarters and lack of forwarding address, (*see* ECF No. 31), may serve as indication PASO might no longer be operational.  The SEC also provides no information suggesting that PASO is still operating as a business.

---

[6] Consistent with the SEC's briefing, the Court assumes an applicable statutory maximum of $1,152,314 per violation.  (*See* ECF No. 29-1, at 25 ("The SEC's instant motion for default judgment states that the maximum third-tier penalty for entities like PASO "is the greater of $1,152,314 per violation or the gross amount of the pecuniary gain to that entity from each violation.""))

Applying its discretion and balancing the egregiousness of the scheme with PASO's apparent financial condition, the Court finds the SEC's request for a total $150,000 civil penalty to be reasonable. Because of the similarity of the claims, the Court imposes a $75,000 civil penalty on each count and $150,000 in total.

**B.    Permanent Injunction**

"A district court has broad discretion to enjoin possible future violations of federal securities laws." *SEC v. Collector's Coffee, Inc.*, No. 19-cv-4355 (VM), 2025 WL 752221, at *21 (S.D.N.Y. Mar. 10, 2025). "To obtain a permanent injunction, the SEC must show that there is a reasonable likelihood of future violations of the securities laws." *Id.* "To evaluate the likelihood of recurrence of wrongdoing, a court may consider the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the recurrent or isolated nature of the infraction, the defendant's recognition of the wrongful nature of his conduct, and the likelihood, given the defendant's occupation, that future violations may occur." *Id.* "A permanent injunction is particularly appropriate where a violation was founded on systematic wrongdoing, rather than an isolated occurrence and where the defendant's persistent refusals to admit any wrongdoing make it rather dubious that the defendant is likely to avoid such violations of the securities laws in the

future in the absence of an injunction." *Id.* (internal quotations and brackets omitted).

The SEC has not at all met its burden to show a reasonable likelihood that PASO will again violate Sections 10(b) and 17(a). As the Complaint makes clear, "[t]his matter involves a scheme orchestrated by Weitzberg and Gonzalez to artificially inflate the stock price of PASO, a microcap issuer that they controlled." (Complaint ¶ 1.) PASO's scheme, as alleged, was a two-person effort by Weitzberg and Gonzalez in early 2020. There is no longer a risk of either individual causing PASO to again violate Sections 10(b) and 17(a). Weitzberg is deceased, and Gonzalez resigned from PASO nearly five years ago, in June 2020. (*See* Complaint ¶ 14.) As noted earlier, the SEC has provided no information suggesting PASO is still operating as a business, and the SEC's attempt to serve PASO at its last known business address was unsuccessful because the unit was vacant with no forwarding address. (ECF No. 31.) The SEC has not plausibly explained how PASO's scheme orchestrated by one director who is now deceased and another director who left the company nearly five years ago is reasonably likely to recur. The Court therefore respectfully denies the SEC's request for a permanent injunction.

## CONCLUSION

The SEC's motion for default judgment is granted as to both Claims 1 and 2. As to remedies, the Court imposes a $75,000 civil penalty against PASO for Claim 1, a violation of Securities Act Section 17(a), and a separate additional $75,000 civil penalty against PASO for Claim 2, a violation of Exchange Act Section 10(b) and Rule 10b-5 thereunder. The SEC's request for a permanent injunction is respectfully denied.

The clerk is respectfully requested to enter judgment in the amount of $150,000 against defendant PASO and to serve a copy of this Memorandum & Order and Judgment on defendant PASO at 2001 Marcus Avenue, Suite N 218, New Hyde Park, NY 11042, PASO's last known business address, no later than May 20, 2025.

**SO ORDERED.**

Dated:    May 19, 2025
          Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York